**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALYSSA AGNES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 25-cv-6361 |
| BANFIELD PET HOSPITAL and | : | |
| MICHELLE GARRITY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

**Younge, J.**                                                                              **May 6, 2026**

Currently before the Court is the Motion to Compel Arbitration, ECF No. 16 ("Motion"),

filed by Defendant Medical Management International, Inc. ("MMI") (improperly pled as Banfield

Pet Hospital, *see* ECF No. 1 at 1; ECF No. 18 at 8) and Defendant Michelle Garrity ("Garrity")

(collectively, "Defendants"), as well as the filings in opposition to and support thereof, ECF Nos.

18, 19.[1]  Plaintiff Alyssa Agnes ("Plaintiff") argues chiefly that Defendants' litigation conduct

waived Defendants' right to compel arbitration and that vagaries in the Arbitration Agreement

prevent it from being enforced. Although Defendants could have made known their intention to

compel arbitration sooner, the Court has determined that the Arbitration Agreement signed by

Plaintiff is definite enough to be enforced and that Defendants did not waive their right to compel

arbitration. For these reasons and those set forth in greater detail in this memorandum, Defendants'

Motion is granted.[2]

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

[2] The Court finds this Motion appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).

I.      **Background**

A.      **The Parties**

Defendant MMI describes itself as a Delaware corporation with a corporate headquarters in Washington state that does business as Banfield Pet Hospital ("Banfield"). ECF No. 1 at 4. Defendant Garrity is alleged to have been, at all relevant times, an agent of MMI with supervisory authority over Plaintiff. *Id.* at 20. As pled, Plaintiff began working for MMI on November 2, 2015. *Id.* at 13.

B.      **Facts and Procedural History**

On November 22, 2023, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") accusing Defendants of disability discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). ECF No. 18 at Exhibit 1. The complaint was docketed by the PHRC on January 3, 2024. Defendant answered the complaint in "early 2024." *Id.* at 1. On September 23, 2025, Plaintiff also commenced this action in the Philadelphia Court of Common Pleas to bring claims against Defendants for disability discrimination in violation of the PHRA. ECF No. 1 at Exhibit A. The lawsuit was served on October 10, 2025. *Id.* at 1. Defendants removed the action to this Court on November 11, 2025, *id.*, and filed an answer on November 17, 2025, ECF No. 10. The Parties collaborated on a joint discovery plan, which was submitted to the Court on December 3, 2025, ECF No. 12, attended a Rule 16 conference with Judge Anita Brody on December 16, 2025, ECF No. 15, and propounded discovery requests on one another. Defendants raised their intent to compel arbitration for the first time when they met and conferred with Plaintiff on January 16, 2026. ECF No. 16 at Exhibit C. No filings before January 16, 2026, made referenced the possibility that Plaintiff could be

2

compelled to arbitrate her claims. On February 4, 2026, Defendants formally moved to compel arbitration. ECF No. 16.

### C.    The Arbitration Agreement

On October 19, 2015, Plaintiff signed a Mutual Arbitration Agreement (the "Arbitration Agreement" or "Agreement"). The Arbitration Agreement provides, in pertinent part:

> Should a dispute arise between you and Banfield with respect to your hiring, terms or conditions of employment, employee relations, performance, discipline, compensation, separation of employment, or any other issue covered by the employer-employee relationship that cannot be resolved by direct, personal communications as described above; . . . both you and Banfield (hereinafter "parties") agree to submit the dispute to final and binding arbitration, before a single arbitrator, utilizing the services of a recognized arbitration service, a retired judge or other qualified arbitrator within the county where you work(ed) for Banfield at the time of the dispute. The arbitration shall be conducted following the rules of the arbitration service selected or other rules by mutual agreement.
>
> . . .
>
> Nothing in this Agreement prohibits you from filing a complaint with the EEOC or any other federal, state or local agency designated to investigate complaints of unlawful employment practices.
>
> . . .
>
> The applicable state or federal statute of limitations shall apply to any claim or dispute under this Agreement. This Agreement shall be governed, interpreted and enforced under the laws of the State where you worked for Banfield at the time the dispute arose.
>
> **Selection of an Arbitrator:** The parties shall select an arbitrator by mutual agreement, or if they cannot agree, then an arbitration service shall be asked to select the arbitrator.
>
> **Arbitrator's Award:** The arbitrator shall issue a written opinion and decision after the close of the case, Judgment upon the award issued by the arbitrator may be entered into any court having jurisdiction over the claims. The decision of the arbitrator is final and binding.
>
> **Enforceable Agreement:** By signing this Agreement, both parties are entering into an enforceable arbitration agreement. Except as noted herein, this Agreement constitutes a waiver of any state or federal court proceeding and/or jury trial.

3

**Fees and Costs:** Each party shall be responsible for its own attorney fees and costs. However, if any party prevails on a statutory, common law or contract claim that, by applicable law entitles the prevailing party to payment of reasonable attorneys' fees and costs by the other party, the arbitrator may award reasonable fees and costs in accordance with the law. Banfield shall pay the arbitrator's fees and costs and any administrative fees associated with the arbitration (not including your initial filing fees, but including Banfield's filing fees). Banfield shall not inform the arbitrator that it is paying the arbitrator's fees and costs. The arbitration shall be recorded by a licensed court reporter, upon the request of either party. If the request is mutual, the parties shall equally share in the costs of the court reporter. If only one party requests court reporting services, that party shall pay the full costs.

**Location:** The location of the arbitration shall be in the state and county where you worked for Banfield at the time the dispute arose.

ECF No. 16-2 at Exhibit B.

## II.    Legal Standard

A response to judicial hostility to arbitration, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and requires courts to enforce covered arbitration agreements according to their terms, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citing 9 U.S.C. § 2). Although the FAA has been described as reflecting a "policy favoring arbitration," read in its historical context, the statute does not allow courts to "devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

A motion to compel arbitration requires courts to inquire into (1) "whether a valid agreement to arbitrate exists" and (2) "whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). If the answer to both questions is in the affirmative, the Court *must* enforce the agreement to arbitrate "save upon such grounds as exists at law or in equity for the revocation of any contract." *See White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (citing 9 U.S.C. § 2); *see also Dean*

4

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

### III.    Discussion

Plaintiff makes three arguments that arbitration cannot be compelled in this case. First, Plaintiff argues that the terms of the Arbitration Agreement are not sufficiently definite. Second, Plaintiff argues that Defendants waived their right to compel arbitration. Third, Plaintiff argues that Defendant Garrity is not a party to the Arbitration Agreement. Because these arguments are untenable, Plaintiff may be compelled to arbitrate.

#### A.    Definiteness of Arbitration Agreement

##### 1.    Applicable Law

Before mandating arbitration, the Court must "look to the relevant state law of contracts" to "ascertain whether the parties entered a valid agreement to arbitrate." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (citing *Blair v. Scott Specialty Gases,* 283 F.3d 595, 603 (3d Cir.2002)). Under Pennsylvania law, contract formation requires: "(1) mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Blair*, 283 F.3d at 603).

##### 2.    Analysis

Plaintiff makes three arguments that the language of the Arbitration Agreement is not sufficiently definite to be enforced. First, Plaintiff contends that the Arbitration Agreement—by

permitting an employee to file claims with the EEOC or a comparable state agency[3]—implies that arbitration is not an exclusive remedy under the Agreement. Plaintiff is incorrect. That an arbitration agreement allows a contracting party to separately pursue administrative remedies does not create ambiguity about the agreement's enforceability. On the contrary, the Supreme Court has held that arbitration mandates are entirely consistent with the availability of separate administrative remedies. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (holding that while an Age Discrimination in Employment Act of 1967 claimant may be precluded by an arbitration agreement from pursuing a private judicial action, the claimant is "still [] free to file a charge with the EEOC"); *see Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 546-48 (D.N.J. 2013) (enforcing arbitration agreement and holding that "[t]he EEOC's power to investigate a charge of discrimination is unquestioned, and it cannot be subverted by an agreement to which EEOC is not a party").

Second, Plaintiff contends that the Arbitration Agreement—by not adequately defining the arbitration process—lacks an essential term required for it to be enforced. Specifically, Plaintiff relies on *Sapp v. Indus. Action. Servs., LLC*, 75 F.4th 205 (3d Cir. 2023) to argue that because the Arbitration Agreement does not specify how exactly arbitration will be conducted, the Agreement cannot be enforced. Indeed, rather than outlining specific rules for arbitration, the Agreement states that "[t]he arbitration shall be conducted following the rules of the arbitration service selected or other rules by mutual agreement." ECF No. 16-2 at Exhibit B. However, Plaintiff's argument is misguided. In *Sapp*, the purchase agreement at issue did not even contain the word "arbitration,"

---

[3] The full text at issue is as follows: "Nothing in this Agreement prohibits you from filing a complaint with the EEOC or any other federal, state or local agency designated to investigate complaints of unlawful employment practices." ECF No. 16-2 at Exhibit B.

leading the Third Circuit to conclude that the parties intended for a third-party accounting firm to act "narrowly as an expert and not as an arbitrator." 75 F.4th at 212. The absence of procedural rules that would govern the arbitration was merely further evidence that the agreement did not evince an intent to arbitrate. *Id.* at 214.

Here, by contrast, the Arbitration Agreement explicitly states that the parties will "submit the dispute to final and binding arbitration, before a single arbitrator, utilizing the services of a recognized arbitration service, a retired judge or other qualified arbitrator within the country where [Plaintiff] work(ed)." ECF No. 16-2 at Exhibit B. Indeed, the FAA contemplates arbitration agreements that do not specify a "method of naming or appointing an arbitrator or arbitrators or an umpire," and provides gap-filing provisions for such circumstances. 9 U.S.C. § 5; *see Wework Companies Inc. v. Zoumer*, No. 16-CV-457 (PKC), 2016 WL 1337280, at \*5 (S.D.N.Y. Apr. 5, 2016) (arbitration agreement enforced despite not identifying the arbitration service or rules to be used); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."). Thus, the Arbitration Agreement cannot be found to lack an essential term simply because it leaves open procedural details of the arbitration process.

Third, Plaintiff contends that a miscellany of other ambiguities in the Arbitration Agreement make it unenforceable. By way of example, Plaintiff argues that the Agreement "indicates that Banfield will pay for the arbitration other than filing fee, but will not tell the arbitrator it is paying for arbitration." ECF No. 18 at 8. Plaintiff provides no argument, let alone case law, to support its view that such a provision makes an arbitration agreement unenforceable.

In sum, having rejected Plaintiff's arguments to the contrary, the Court has determined that the Arbitration Agreement is sufficiently definite to be enforceable.

### B.    Waiver

Plaintiff argues that Defendants waived their right to compel arbitration by availing themselves of the judicial process. Specifically, Plaintiff contends that Defendants participated in litigation for over two years, over the course of which Defendants answered the complaint, participated in a Rule 16 conference, and provided a Rule 26(f) report, all while not mentioning arbitrability as a potential affirmative defense. Although Defendants could have made known their intention to compel arbitration sooner, the totality of the circumstances reveals that Defendants were not so derelict as to waive their right to compel arbitration.

### 1.    *Applicable Law*

"[P]arties have the entire contractual toolbox available to them to seek to enforce or oppose an arbitration provision." *White*, 61 F.4th at 339; *see also* 9 U.S.C. § 2 (providing that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract"). Included in this toolbox is waiver—the principle that a party may be deemed to have intentionally relinquished a contractual right by acting inconsistent with that right. *White*, 61 F.4th at 339 (citing *Morgan*, 596 U.S. at 417). Thus, a defendant's right to compel a plaintiff to arbitration may be waived. *See id.* That is because fair notice at an early stage of the litigation of a party's intent to exercise their arbitration rights is essential to allowing the Court and the opposing party to "manage the litigation with this contingency in mind." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).

Since the Supreme Court's decision in *Morgan*, a party waives its right to compel arbitration when that party (1) had knowledge of an existing right to compel arbitration and (2)

acted inconsistently with that right. 596 U.S. at 412; *see Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023); *Globus Med., Inc. v. Life Spine, Inc.*, No. 1:21-CV-1445-JPM, 2025 WL 2879184, at *8 (D. Del. July 15, 2025).[4] "In analyzing whether waiver has occurred, a court focuses on the actions of the party who held the right and is informed by the circumstances and context of each case." *White*, 61 F.4th at 339–40 (cleaned up). "In other words, the totality of circumstances must demonstrate that Defendants displayed their intention to litigate Plaintiff['s] [] claims." *Jones v. CVS Health Corp.*, No. 24-CV-1703, 2025 WL 2147363, at *3 (E.D. Pa. July 29, 2025), *appeal dismissed sub nom. Jones v. CVS Health Corp*, No. 25-2671, 2026 WL 542639 (3d Cir. Jan. 26, 2026)

      2.     *Analysis*

Here, Defendants did not act so inconsistently with the right to compel arbitration as to waive that right. Chiefly, that is because Defendants did not seek to gain an upper hand through the litigation process before turning to arbitration. Fewer than four months elapsed between the lawsuit being served on Defendants and Defendants formally moving to compel arbitration.[5] During that time, no motions were filed, let alone ruled on; and while discovery requests were exchanged, discovery has not yet been produced. As is well established, removal to federal court also "does not waive defenses that a defendant would otherwise have in state court. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 131–32 (3d Cir. 2020).

---

[4] The Supreme Court has eliminated the element of prejudice. *See Morgan*, 596 U.S. at 417 (holding that, under the FAA, a court may not "condition a waiver of the right to arbitrate on a showing of prejudice").

[5] Since Defendants could not ask Plaintiff to waive her right to pursue administrative remedies, Plaintiff is wrong to state that Defendants delayed moving to compel arbitration while the administrative process was proceeding. *See* discussion *supra* Part III.A.2.

Defendants' greatest procedural offense is not including arbitrability as an affirmative defense in their answer and not explaining this delay to the Court. *Cf. Button v. Dolgencorp, LLC*, No. CV 22-7028 (MAS) (RLS), 2025 WL 642687, at \*4 (D.N.J. Feb. 27, 2025) ("Untimeliness in filing a demand for arbitration can be justified by explaining the delay to the court."). Given the full context of this case, this shortcoming is not enough to constitute waiver. *See Valli v. Avis Budget Rental Car Grp.*, No. 14-6072, 2024 WL 4349747, at \*6 (D.N.J. Sept. 30, 2024) ("Waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery."); *Zenon v. Dover Downs, Inc.*, No. CV 21-1194-RGA, 2022 WL 2304118, at \*2 (D. Del. June 27, 2022) ("Although Defendant's Answer does not mention the Arbitration Agreement, Defendant's motion to compel arbitration is its first substantive motion in this case, and the motion was filed within six months of the initial filing of this suit. . . . [Thus,] I do not think that Defendant's actions evince an intent to 'knowingly relinquish the right to arbitrate by acting inconsistently with that right.'"). Even the case Plaintiff primarily relies on only found waiver after noting that the defendant "waited until it had received an adverse ruling on pretrial motions before invoking and seeking to enforce the arbitration provision of the contract." *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. Ct. 1992).

In sum, the Court does not condone Defendants' failure to assert arbitrability as early in the litigation as possible; but absent sufficient evidence that Defendants endeavored to take advantage of the judicial forum, the Court will not make a finding that Defendants' right to compel arbitration has been waived.

10

### C.    Enforceability Against Garrity

Plaintiff argues that even if there is a valid agreement to arbitrate that has not been waived, Plaintiff's dispute with Defendant Garrity cannot be compelled to arbitration because (1) Defendant Garrity is not a party to the Arbitration Agreement, and (2) the Arbitration Agreement does not expressly state or imply that claims against Defendant Garrity individually should be subject to arbitration. Plaintiff's argument is unsupported. Since Plaintiff's claims against Defendant Garrity arise solely out of Defendant Garrity's alleged discriminatory conduct as an agent of MMI, Plaintiff's dispute with Defendant Garrity falls under the terms of the Arbitration Agreement.

#### 1.    Applicable Law

"Under Pennsylvania law, non-signatories to an arbitration agreement can enforce it when there is 'an obvious and close nexus' between the non-signatories and the contract or the contracting parties." *Herman Goldner Co. Inc. v. NORESCO, LLC*, No. 2:22-CV-05047-JDW, 2023 WL 2761290, at *3 (E.D. Pa. Apr. 3, 2023) (quoting *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 469 n.2 (Pa. Super. Ct. 2017)); *see also Arthur Anderson LLP v. Carlisle*, 556 US 624, 631 (2009) (holding that [b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract," nonparties to a contract may invoke an arbitration provision).

#### 2.    Analysis

Here, such an obvious and close nexus between Plaintiff, Defendant Garrity, and the Arbitration Agreement exists. First, that is because Plaintiff's theory of liability against Defendant Garrity is that Defendant Garrity was an "agent, servant, and/or employee" of Defendant MMI and was "a member of upper management responsible for the enforcement of anti-discrimination and

11

anti-retaliation laws and policies, and who aided and abetted" Defendant MMI in discriminating against Plaintiff. ECF No. 1 at 12. In other words, Defendant Garrity's liability is entirely contingent on Defendant MMI's liability. *See Scully v. Allegheny Ludlum Corp.*, 257 F. App'x 535, 538 (3d Cir. 2007) (individual defendants "cannot be liable under the PHRA for aiding and abetting discrimination" where employer did not discriminate). Courts have declined to allow plaintiffs to escape arbitration in similar circumstances. *Herman Goldner Co. Inc.*, 2023 WL 2761290, at *3 (subcontractors who were not signatories to the arbitration agreement may compel arbitration).

Second, the Arbitration Agreement's broad language provides that disputes between Plaintiff and MMI "with respect to . . . employee relations, performance, discipline, . . . [and] separation of employment" should be submitted "to final and binding arbitration." ECF No. 16-2 at Exhibit B. This language clearly encompasses disputes arising out of Plaintiff's relationship with Defendant Garrity, who Plaintiff alleges had supervisory power over her. ECF No. 1 at 20. Thus, Plaintiff's claims against Defendant Garrity do not fall outside the scope of the Arbitration Agreement.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted. An appropriate order follows.


**It is so ORDERED.**



         **BY THE COURT:**

         */s/ John Milton Younge*

         **Judge John Milton Younge**